IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 4, 2016

IN RE E.S.L.

Appeal from the Juvenile Court for Washington County
No. 35801    Sharon M. Green, Judge

_____

No. E2015-01709-COA-R3-PT-FILED-AUGUST 29, 2016
_____

This is a termination of parental rights case. M.L. (Mother) and M.O. (Stepfather) filed a petition to terminate the parental rights of L.D.D. (Father) to his child, E.S.L. (the Child). The trial court found clear and convincing evidence of two grounds supporting termination. The court also found, by the same standard of evidence, that termination is in the best interest of the Child. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Christina Stapleton, Johnson City, Tennessee, for the appellant, L.D.D.

Janie Lindamood, Johnson City, Tennessee, for the appellees, M.O. and M.L.

**OPINION**

**I.**

On March 2, 2012, the Child's maternal grandmother and paternal grandmother both filed petitions with the trial court alleging that the Child was dependent and neglected. The Child's maternal grandmother alleged that Father had physically and verbally abused Mother and that she had heard from others accusations of drug abuse by both parents. The Child's paternal grandmother alleged that Father had admitted to using drugs. She noted that he was always extremely violent with Mother. Both grandmothers acknowledged that they had seen a change in the Child's behavior as a result of the parents' conduct. After an emergency hearing on March 8, 2012, the trial court entered an order the following day, which found that there was probable cause to believe the

Child was dependent and neglected. Accordingly, the trial court granted temporary joint custody of the Child to his grandmothers. Father was permitted to visit the Child with some restrictions. If the restrictions were to be lifted, Father had to (1) complete an alcohol and drug assessment and follow all recommendations; (2) refrain from using illegal or synthetic drugs; (3) cease the misuse of any prescribed medications; (4) maintain a safe and stable home; (5) participate in counseling addressing conflict resolution; and (6) complete parenting classes for effective co-parenting.

On April 12, 2012, the Child's Guardian ad Litem (the GAL) filed a motion to change temporary custody and modify visitation. This motion was in response to a call to the GAL from the Child's paternal grandmother who stated that (1) Father had been acting erratically; (2) Father was not following the visitation restrictions set by the trial court; (3) Father had slapped Mother on two separate occasions; (4) the police had been called on one occasion to remove Father from the home of the Child's maternal grandmother; and (5) the Child, upon returning from a visit with Father, had abrasions on both of his cheeks, had a burn on his finger, and said "Dada hurt me." On April 13, 2012, the trial court entered an order, which further restricted Father's visitation and gave sole temporary custody of the Child to the maternal grandmother.

On April 25, 2012, the trial court held an adjudicatory hearing on the GAL's motion to change temporary custody and modify visitation. Prior to the hearing, both Mother and Father stipulated that the Child was dependent and neglected. Thereafter, on May 2, 2012, the trial court entered an order that (1) continued the Child's temporary custody with his maternal grandparents; (2) allowed Father to have supervised visitation in a public place only after conversing with the Child's maternal grandparents so that they could determine if Father was under the influence of drugs and alcohol prior to visitation; and (3) ordered Father to pay $150 per month in child support and an additional $100 per month to cover past-due support payments.

On September 6, 2012, Father was arrested for violation of probation; he was incarcerated in the Washington County Detention Center. The record reflects that, prior to this arrest and incarceration, Father had an extensive criminal history. He previously had been charged with (1) possession of drug paraphernalia and driving without a license on December 15, 1997; (2) burglary on February 3, 1999; (3) violation of probation and failure to pay fines and court costs on February 7, 2001; (4) failure to appear for court on February 25, 2002; (5) violation of the implied consent law, driving under the influence, evading arrest, leaving the scene of an accident, driving without a license, and driving without proof of insurance on April 6, 2002; (6) aggravated assault on August 7, 2002; (7) driving on a suspended license on May 15, 2003; (8) attempted aggravated burglary and vandalism over $500 on February 15, 2004; (9) violation of probation on February

17, 2004; (10) possession of cocaine, possession of marijuana, possession of hydrocodone, possession of diazepam, possession of oxycontin, possession of drug paraphernalia, driving on a suspended license, and violation of the open container law on June 19, 2004; (11) three counts of selling cocaine and failure to appear for court on July 16, 2004; (12) driving on a suspended license and speeding on December 16, 2007; (13) failure to appear for court on December 18, 2007; (14) identity theft and violation of probation on March 26, 2009; (15) violation of probation on May 9, 2009; (16) driving on a suspended license on February 28, 2010; (17) failure to appear for court on November 1, 2010; and (18) violation of probation on November 18, 2010.[1]

On August 21, 2014, the Child's maternal grandparents filed a petition to modify the trial court's prior custody order; they sought the return of custody to Mother. On October 6, 2014, Father was released from jail after over two years in custody. That same day, the trial court held a hearing on the petition of the maternal grandparents; Father was not present in court. On October 7, 2014, the trial court entered an order, which returned sole legal and physical custody of the Child to Mother after concluding that Mother (1) had a safe and consistent residence with her parents; (2) maintained a stable income; (3) provided all the daily care for the Child; (4) met all of the Child's educational needs; (5) contributed significant financial support for the Child; (6) remained drug free; and (7) had the support of her parents.

On December 11, 2014, Mother and Stepfather[2] filed a petition to terminate Father's parental rights. In the petition, they alleged four separate grounds for termination: (1) abandonment due to Father's failure to visit the Child, said ground being pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) (2014) and 36-1-102(1)(A)(iv) (2014); (2) abandonment as a result of Father's willful failure to support the Child pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv); (3) abandonment as a result of Father's wanton disregard as provided for in Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(A)(iv); and (4) persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). A trial was held on August 13, 2015. On August 28, 2015, the court entered an order terminating Father's parental rights after finding clear and convincing evidence supporting the following two grounds: abandonment for failure to pay support and wanton disregard. In addition, the trial court held that there was clear and convincing evidence that termination of Father's parental rights was in the Child's best interest.

---

[1] This string of crimes over a period of roughly fifteen years resulted in Father being incarcerated on multiple occasions.

[2] Though Mother and Stepfather were not married at the time of filing, they were subsequently married on January 2, 2015.

## II.

Father filed a notice of appeal on September 4, 2015, raising the following issues, as taken verbatim from his brief:

> Whether the trial court erred in finding that there was clear and convincing evidence that [Father] [a]bandoned by [f]ailure to [s]upport.
>
> Whether the trial court erred in finding that there was clear and convincing evidence that [Father] [a]bandoned by [w]anton [d]isregard.
>
> Whether the trial court erred in finding that there was clear and convincing evidence as to the ground of [p]ersistent [c]onditions.[3]
>
> Whether the trial court erred in finding that there was clear and convincing evidence that it is in the best interest of the [C]hild that [Father's] parental rights be terminated.

(Numbering in original omitted.)

## III.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

---

[3] In its order terminating Father's parental rights, the trial court clearly stated that "evidence was not entered to support this ground" and, accordingly, dismissed the ground of persistence of conditions.

4

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.")

The Supreme Court has recently delineated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and

5

convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

## IV.

### A.

When analyzing the first ground for termination – abandonment as a result of Father's failure to support – the trial court concluded the following:

The [c]ourt finds [Mother and Stepfather have] proven by clear and convincing evidence that . . . Father had the ability to pay support during the applicable time period, May 6, 2012 to Sept[ember] 5, 2012; that Father did willfully fail to pay child support for [the Child], or make reasonable payments toward child support, based on the following evidence and testimony. During the applicable time period, the [C]hild was in the custody of [the Child's maternal grandmother]. [The maternal grandmother] testified that during that period . . . Father . . . paid no support to her for the [C]hild, nor did Father supply any diapers, clothes, or in kind support. Child support records show that . . . Father did not pay any child support during the applicable time period. Exhibit #1 includes statements made by [Father] to the Department of Children Services that establish that [Father] was earning approximately $1,100.00 . . . per month near the applicable time. Testimony of [Father's former landlord] was that

6

during that time, [Father] was residing in her home, he was paying her $150.00 . . . per month rent, he bought his own food, toiletries, etc. That he was busy, in addition to working construction, he was also scrapping. [Father] testified on cross examination . . . that he did not pay any support during that time; that during that period of time he was spending his money on smoking and buying drugs. [Father's] testimony was that during that time he was earning roughly $200.00 . . . per week plus doing odd jobs and that he was paying [Father's former landlord] $500.00 . . . per month rent.

The [c]ourt finds that [Father's] testimony was not credible.

Based on the evidence entered, the [c]ourt finds that [Mother and Stepfather] have proven by clear and convincing evidence that [Father] willfully failed to pay child support during the period from May 6, 2012 to September 5, 2012, thus proving the ground [of] [a]bandonment for [fa]ilure to pay child support.

(Emphasis in original omitted.)

Our review of the record demonstrates that the evidence does not preponderate against the trial court's factual findings on this ground. Tenn. Code Ann. § 36-1-102(1)(A) defines abandonment by an incarcerated parent for failure to support:

A parent . . . is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's . . . incarceration[.]

This Court has previously explained what constitutes willful failure to support:

Failure to provide support is willful if the parent is aware of his or her duty to support, is capable of paying support, makes

7

no attempt to provide support, and has no justifiable excuse. Willful conduct is intentional or voluntary; often, intent must be inferred from circumstantial evidence.

*In re Charlie G.C.*, No. E2010-01501-COA-R3-PT, 2011 WL 1166849, at *8 (Tenn. Ct. App., filed Mar. 30, 2011) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT and M2004-01572-COA-R3-PT, 2005 WL 1021618, at *9 (Tenn. Ct. App., filed Apr. 29, 2005)).

In the present case, Father was incarcerated on September 6, 2012. As a result, the four-month time period we must examine in order to establish abandonment by failure to support is May 6, 2012, to September 5, 2012. On appeal, Father concedes that he did not pay any child support during the relevant four-month period, despite admitting he was aware of his duty to pay child support. Father testified that he did not have stable employment during that time and argues on appeal that he "was significantly limited in his ability to render financial support." However, the record reflects that he reported to DCS on April 17, 2012, he was self-employed and earning roughly $1,100 per month. Furthermore, Father testified at trial that, during the relevant four-month time period, he was making $200 a week doing odd jobs and "scrapping." He also admitted to buying cigarettes and illegal drugs during that period. When taking all of these factors into account, we hold, as a matter of law, that the evidence clearly and convincingly demonstrates that Father willfully failed to support the Child.

**B.**

The trial court concluded the following with respect to the ground of abandonment as a result of wanton disregard:

> The Court finds there is clear and convincing evidence that . . . Father has engaged in conduct which exhibits a wanton disregard for the welfare of the [C]hild. The [c]ourt makes the following findings of fact: [Father] has an extensive history of criminal activity. He has three convictions in Washington County for the [s]ale of [s]chedule II as well as multiple drug related convictions out of Roan[e] County Tennessee. That [Father] was on parole for these charges when the [C]hild was conceived and born. The [C]hild's date of birth is May 17, 2009. That [Father] testified that he was aware that if he violated his rules of probation he could go back to jail. He testified that in 2012 he was engaged in

8

criminal activity, using crack, bath salts, smoking marijuana, in addition to other acts that resulted in [v]iolations of his probation. Certified [c]ourt [r]evocation [o]rders establish that he was charged with [d]riving on a [s]uspended [l]icense, new criminal charges, failing to notify probation office of change of address, failing to maintain a stable home, failing to comply with [c]ourt obligations, the charge of criminal impersonation. [Father] testified that he was unaware that his license had been suspended, but later acknowledged on cross examination that he had placed the letter from the Department of Safety in the glove box of his vehicle. While incarcerated, he received two write ups. Since his release, he has admitted that he smoked marijuana, which could have resulted in a new violation of his probation; two of the drug screens administered by his probation office[r] were suspect because they were diluted; that another was positive and [Father] was to provide the probation officer proof of prescriptions, which he did not do, thus they were considered positive. That yesterday, August 12, 2015, he was advised by the probation office[r] to come to the probation office before 3:00 p.m. for a drug screen, and he did not go for the drug screen. Prior to [Father's] incarceration, he engaged in domestic violence acts against . . . Mother. Several of the acts of violence were in the presence of the [C]hild.

Father has demonstrated through his Facebook and My[s]pace postings that he continues to associate with persons that he acknowledged have criminal backgrounds; that he continues to drink alcohol and party. All indicators that . . . Father continues to engage in activity that exhibits a wanton disregard for the welfare of [the Child].

\*          \*          \*

Based on the evidence entered, the [c]ourt finds that [Mother and Stepfather] have proven clear and convincing evidence that [Father] exhibited [w]anton [d]isregard, thus proving the ground, [a]bandonment – [w]anton [d]isregard for the welfare of the [C]hild.

(Emphasis in original omitted.)

Upon our review of the record in this case, we hold that the evidence does not preponderate against the trial court's factual findings as to this ground. This Court has "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse . . . can alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68. In the present action, the record reflects numerous criminal charges against Father dating back to 1997, with multiple charges coming after the birth of the Child. For those charges, he was incarcerated on multiple occasions. In addition, Father has a history of substance abuse, with the record reflecting his consumption of crack, cocaine, marijuana, and bath salts. Even the threat of being incarcerated once again was not enough to deter Father from abusing drugs upon his release from jail in 2014, as he testified at trial that he had used marijuana since his release. When taking all of these facts into account, and considering only the conduct of Father after the birth of the Child, we hold, as a matter of law, that the relevant evidence clearly and convincingly demonstrates Father's wanton disregard for the welfare of the Child.

## V.

After finding that there are two statutory grounds warranting termination of Father's parental rights, we now focus on whether termination is in the Child's best interest. When considering the issue of "best interest," we are guided by the following statutory factors set forth in Tenn. Code Ann. § 36-1-113(i):

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

10

(3)   Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)   Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)    The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)   Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)   Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)    Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)   Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)).  In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d at 499 (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

11

In the present action, the trial court's August 28, 2015 order terminating Father's parental rights included the following "best interest" analysis:

> The [c]ourt finds the following facts: That . . . [F]ather, since his release from incarceration, has smoked marijuana, has failed drug tests given by his probation officer, has resided in three different residences, has had two different women residing with him at different times at his second residence, one of which had a criminal history, that he testified he did not know she had a criminal background at the time. There are Facebook and Myspace postings reflecting that there is not a true adjustment; he continues to associate with convicts; continues consumption of alcohol. One Facebook posting posted by him states "[1]st time I drank in 2 years," which does not indicate a life of sobriety.
>
> *    *    *
>
> Father has not maintained regular visitation with [the Child]. Father was aware that he could visit the [C]hild by going through [the Child's therapist], however, he failed to make contact with her.
>
> *    *    *
>
> Prior to incarceration there was a relationship, however, evidence is that during one of . . . Father's visitations, he left the [C]hild to be returned to the custodian in the care of another man. Father was incarcerated for more than two years. The [c]ourt finds there is no meaningful relationship between [Father] and the [C]hild.
>
> All parties stipulated to [the Child's therapist's] credentials and her ability to testify as an expert in this cause. The [c]ourt finds [the Child's therapist's] testimony credible and her qualifications exemplary. Her testimony is that during her treatment of the [C]hild, the [C]hild self-disclosed, without a need to [e]licit information, that he was fearful of his "old dad" and that his "old daddy" hurt his mommy. The expert also observed this fear by the [C]hild's body language.

12

Her testimony was that the [C]hild had no meaningful relationship with [Father]. [The Child's therapist] further testified that the [C]hild is well adjusted to his current environment and at this time that it would be detrimental to the well[-]being of the [C]hild to expose the [C]hild to [Father], especially if [Father] did not show consistency in working with the [C]hild and the counselor.

\* \* \*

The [c]ourt finds that a change of caregiver and a change of the [C]hild's current physical environment would have a detrimental effect on the . . . [C]hild. Testimony of the [Child's] therapist . . . is that the [C]hild is extremely attached to . . . Mother and . . . [Stepfather]; that the [C]hild is in good health; he is living in a healthy and safe environment; he is in an intact happy home; he does not meet the criteria for a mental health diagnosis and exposure to [Father] would be detrimental to the well[-]being of the [C]hild. In addition, [the Child's maternal grandmother] testified that all the [C]hild's needs are being met; the [C]hild is very attached to . . . [Stepfather] and they have a strong parental-child bond[.] To change the [C]hild's relationship or environment would have a detrimental effect on the [C]hild.

\* \* \*

The [c]ourt finds that evidence is that [Father] committed domestic assault against . . . Mother on at least two occasions when the child was present.

\* \* \*

Exhibit #1 is a certified copy of the [j]uvenile [c]ourt record, including child support and dependency and neglect proceedings. The [c]ourt in April 2012 adjudicated the [C]hild dependent and neglected. At that time, both parents have admitted that . . . they were both abusing and using illegal drugs. Mother . . . has rehabilitated herself; she has steady employment; she attended alcohol and drug treatment

13

and counseling; she has established a stable and loving home for the [C]hild. In October 2014, custody was returned to . . . Mother through this [c]ourt.

Mother has married [Stepfather], who has fulfilled the father role in the [C]hild's life. Pictures of the home show that [t]he home is very nice and meets the needs of the [C]hild. There is no alcohol consumption in the home. The [c]ourt finds that [Mother and Stepfather's] home is a safe, stable and permanent home that meets the needs of the [C]hild.

Father . . . lives in a 2 bedroom apartment that he moved into one week ago and with whom he shares with a man that has, according to Father's testimony, at least some misdemeanor convictions. . . . Father has admitted smoking marijuana, an illegal substance, and the probation office has two suspect drug screens. Facebook postings further establish that Father has not changed his life[style] and he continues to drink and party. There is no evidence that Father is unable to take care of the [C]hild, but the [c]ourt finds Father's home is not a safe and healthy home environment for the . . . [C]hild.

\*   \*   \*

The [c]ourt finds that . . . [F]ather did make one $75.00 payment of child support on January 24, 2013, and then after the termination was filed . . . [F]ather started paying through wage assignment starting on Feb[ruary] 21, 2015 through May 15, 2015. . . . [F]ather has not made any payments since June 1, 2015.

The [c]ourt finds that . . . Father has not paid child support consistent with support guidelines.

Best Interest: The [c]ourt finds there is clear and convincing evidence that it is in the best interest of [the Child] that the parental rights of [Father] be terminated[.]

(Numbering in original omitted.)

14

On appeal, Father argues that he has (1) obtained housing and employment; (2) "attended the classes required" and is working on furthering his education; (3) not incurred any new criminal charges since his release from jail in 2014; (4) gone to rehab for his drug use and passed his drug screens; and (5) has made "adjustments in his conduct that rise to the level of ensuring safety of the [C]hild in his home." In addition, Father attributes his failure to visit the Child after being released from custody to the fees for supervised visitation, which he says "were more than he could afford at the time." Father goes on to contend that he had a meaningful relationship with the Child prior to his incarceration, and that the Child's therapist testified that the Child is in "good shape" emotionally. Father also refutes that he committed domestic assault against Mother on at least two occasions, arguing that the trial court relied purely on Mother's testimony when making that finding. Father maintains that, though he has admitted to "drinking occasionally" and "is going to be struggling for a while to become stable," he is "clean and sober" and not hanging around "with bad influences." Finally, Father states that he has made every effort to make child support payments since being released from incarceration.

We are not persuaded by Father's argument. In our view, there are four areas of concern leading us to the conclusion that termination of Father's parental rights would be in the Child's best interest. First, as the record reflects, Father has admitted to smoking marijuana and drinking since his release from jail in 2014. In addition, since being released from incarceration, Father has failed at least one drug test,[4] had two tests that produced diluted results, and failed to report for another drug test. Such behavior is hardly indicative of someone who is "clean and sober," much less someone who, as Father states in his brief, is "making progress towards remedying the problems that led to the removal of the [Child]." Considering Father's history of substance abuse, his continued use of illegal drugs is proof in our minds that Father has not learned from his past mistakes and does not appear committed to making changes in his behavior necessary to justify continuation of his parental rights.

Second, the record clearly reflects that, since being release from jail, Father has failed to maintain visitation with the Child despite having the opportunity to do so. Father attributes his failure to the Child's therapist and "her fees to supervise visitation." However, the Child's therapist testified at trial that she never discussed a fee for supervision with Father. On the contrary, the Child's therapist stated that she discussed how she could help Father have contact with the Child and provided Father with her

---

[4] Father tested positive for benzodiazepines. Though he maintained that he had a prescription for benzodiazepines, he never submitted proof of the prescription when his probation officer requested it.

15

contact information so that she could make arrangements.  Clearly, Father could have made arrangements through the therapist to visit the Child and simply failed to do so.

Furthermore, the Child's therapist testified about payment options for indigent clients and arrangements she could make for such individuals.  Unlike Father, the trial court deemed her testimony credible, and we have no evidence in the record that would lead us to doubt the truth of her statements.  Rather, we see a situation where Father has attempted to misrepresent the truth and avoid accepting responsibility for his own inaction.  Ultimately, Father's failure in this respect has only extended the period of time he has not seen the Child, a period of time corresponding to some of the most formative years in the life of any child.  In our view, such an extended gap in visitation weighs heavily against a finding that a meaningful relationship exists between Father and the Child.

Moving beyond Father's ongoing substance abuse issues and failure to visit the Child, we note the troubling testimony of the Child's therapist regarding disclosures the Child made to her about Father's violence towards Mother and the Child's own fear of Father.  In particular, the Child's therapist testified that the Child self-disclosed being very frightened when "his old daddy" had hit Mother and appeared "fearful" when recounting the violence.  The Child's own statement regarding Father's violence toward Mother stands in stark contrast to Father's argument on appeal, which simply questions the credibility of the domestic assault accusations against him.  Rather than take steps to address his past violence towards Mother, Father has once again avoided accepting responsibility.  Further, this shortcoming is only compounded by the professional opinion of the Child's therapist, who posited that "there will be some disturbances that will occur because of the history of trauma" if the Child were reintroduced to Father.  Specifically, she believed Father's reintroduction to the Child would be disruptive to the "healthy, safe environment" the Child now enjoys living with Mother and Stepfather.  We agree.

Finally, we again highlight the fact that Father failed to provide any support to the Child in the four months preceding his incarceration in September 2012.  The record makes clear Father's failure in this respect.  Rather, during that time period, the record shows that Father spent money on cigarettes and illegal drugs.  Since his release from incarceration in 2014, Father did make some child support payments through wage assignment between February 21, 2015, and June 1, 2015.  However, the record reflects that Father did not pay any additional support after June 1, 2015.  In the end, we believe Father's failure to prioritize child support payments remains an ongoing issue that strongly weighs against continuation of his parental rights.

With all of these facts in mind, we conclude, as a matter of law, that the trial court was correct in holding that there is clear and convincing evidence that termination of Father's parental rights is in the Child's best interest.

## VI.

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellant, L.D.D. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE

17